Nine-Ten Chestnut Corporation, Appellant, *v.* Philadelphia Parking Authority.

Argued January 5, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Samuel A. Goldberg,* with him *Robert B. Wolf* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*J. Harry LaBrum,* with him *Lewis Weinstock* and *Conlen, LaBrum & Beechwood,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, March 23, 1953:

This was a bill in equity filed to enjoin the Philadelphia Parking Authority from constructing parking

facilities at 1021-29 Chestnut Street. The court sustained preliminary objections which alleged that the plaintiff set forth no cause of action.

Nine-Ten Chestnut Corporation is the owner of real estate 98 feet by 230 feet at No. 910-16 Chestnut Street, which was acquired subsequent to the Act of 1949, P. L. 969, 53 PS §10271 et seq., extending the Parking Authority Law to all cities of the Commonwealth.

On or about October 1, 1951, the Philadelphia Parking Authority purchased premises at 1021-29 Chestnut Street, and since that time the Authority has openly operated a parking lot without objection from anyone. A year later, on October 1, 1952, the plaintiff sent it a letter calling to its attention that the plaintiff had acquired its property before the Authority had purchased the real estate in the 1000 block, and suggesting that the Authority await a report from the Mayor's Master Traffic Committee which might lead to its building elsewhere.

Instead of adopting the suggestion the Authority caused public announcement to be made that it was ready to let contracts for a parking garage on its Chestnut Street site.

In the first place it will be noted that at the time of the filing of the bill the plaintiff was not using its real estate in the 900 block for the purpose of a garage for off-street parking. In the second place it is not averred that its intention to use the same was communicated to the defendant at or about the time of its purchase in October, 1951. Thirdly, the written notice given under date of October 1, 1952, merely called to the attention of the Authority that the plaintiff's property had been bought with the intention of erecting a garage for off-street parking, and merely suggested that the matter be held in abeyance by the

Authority until the report of the Mayor's Master Traffic Committee.

The appellant states, however, that §2 of the Parking Authority Law of 1947 as amended May 9, 1949 and May 10, 1951, 53 PS §10272, provides that a part of the legislative "findings and declarations of policy" is "(i) That it is intended that the authority cooperate with all *existing* parking facilities so that private enterprise and government may mutually provide adequate parking services for the convenience of the public." (Italics supplied). It is contended that this clause is applicable here; but this may be dismissed with the statement that the plaintiff's property was not an *"existing* parking" facility.

It is provided under §5 of the Act, 53 PS §10275: "(a) . . . The Authority shall be for the purpose of. . . establishing a permanent coordinated system of parking facilities, planning, designing, locating, acquiring, holding, constructing, improving, maintaining and operating, owning, leasing . . . land and facilities to be devoted to the parking of vehicles of any kind. . ." On the broad question presented we hold that, in a case such as this, there is no authority in the courts to overrule the determination made by the Parking Authority.

Section 3 of the Act, 53 PS §10273, provides: "(d) The term 'construction' shall mean and include acquisition and construction, and the term 'to construct' shall mean and include to acquire and to construct, all in such manner as may be deemed desirable." The Act gives the Authority wide discretion as to the location and construction of parking garages, and the courts, certainly in cases of this kind, will not review that discretion. Judge FLOOD, speaking for the court below, well stated: "The function of the Authority demands that it be given a wide range of discretion. In devising an over-all plan for off-street parking in Philadelphia

one of its most important tasks will be to exercise judgment as to the degree to which it must directly participate in the business. This judgment will to a large degree depend upon a forecast of future requirements and an estimate of the suitability of present and anticipated facilities to satisfy them. In short, it must presently act on the basis of prediction. . . If the court is to pass upon the propriety of new construction, it must determine such questions as priority of purchases of the property, suitability of the respective locations in view of all the needs of the area and of the city as a whole, whether the plaintiff's prospective construction will provide for as much parking facilities as alleged, whether that facility will be adequate, whether the defendant's facilities and location are preferable to the plaintiff's and whether the plaintiff has the corporate power and financial or other ability to take care of the need properly."

The Parking Authority Law does not provide for appeals to the courts from the determination made by the Authority to construct a parking facility although an appeal is provided for as to the rates to be charged by the Authority.

The present suit is nothing less than an effort to amend the statute by requiring the Authority to litigate every single exercise of its discretionary function.

For these reasons we entered an order affirming the judgment of the court below and directing the appellant to pay the costs.